IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALEX PETERSON, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 25-CV-4538 |
| | : | |
| VALLERIE FRANRAK, *et al.*, | : | |
|     Defendants. | : | |

**MEMORANDUM**

**HODGE, J.**                                                                                    **DECEMBER 4, 2025**

Plaintiff Alex Peterson ("Peterson"), a convicted prisoner who is currently incarcerated at

SCI Phoenix, filed a pro se civil rights complaint pursuant to 42 U.S.C. § 1983, asserting

violations of his rights arising from the alleged interception and review of a request form

addressed to his psychologist containing his personal information by a prison official who was

not authorized to review the information, and his subsequent efforts to seek redress for this

conduct. Currently before the Court are Peterson's Complaint ("Compl." (ECF No. 3)), his

Motion for Leave to Proceed *In Forma Pauperis* (ECF No. 1), and his Prisoner Trust Fund

Account Statement (ECF No. 2).[1] In his Complaint, Peterson asserts claims against Pennsylvania

Department of Corrections ("DOC") employees Vallerie Fanrak ("Fanrak") (incorrectly spelled

"Franrak" in the Complaint), Major Wynumis ("Wynumis"), Agent Theobilli ("Theobilli"),

Deputy Superintendent for Internal Security Harold Kertes ("Kertes"), Captain Dusal ("Dusal"),

Deputy Superintendent for Centralized Services Mandy Sipple ("Sipple"), and Assistant Chief

Grievance Officer Kerri Moore. (Compl. at 4-5.) For the following reasons, the Court grants

---

[1] Also pending are Peterson's Requests for Default (ECF Nos. 8, 9.) The Requests are denied as
moot because the Complaint has not yet been served.

Peterson leave to proceed *in forma pauperis*. The following claims are dismissed with prejudice:

claims asserted under the Health Insurance Portability and Accountability Act ("HIPAA"), due

process claims based on the disclosure of medical information, claims based on the alleged

failure to protect Peterson's right to maintain the privacy of his medical information, claims

based on failure to investigate Fanrak's conduct and prosecute her, claims against Sipple and

Moore arising from their participation in the grievance process, and claims based on failure to

adhere to DOC policies. Peterson's claims against Sipple, Wynumis, and Theobilli in their

supervisory capacities are dismissed without prejudice. The Court is prepared to serve Peterson's

First Amendment retaliation claim against Fanrak, but will first allow Peterson the opportunity to

file an amended complaint that addresses the deficiencies in his Complaint described in this

Memorandum.

I.      FACTUAL ALLEGATIONS[2]

The gravamen of Peterson's claim is that Defendant Fanrak intercepted and read a form

containing personal information that Peterson sent to his psychologist. Fanrak later retaliated

against Peterson when he filed a grievance objecting to her reviewing his private information.

His claims against the remaining defendants stem from their alleged failure or refusal to pursue

an investigation into Fanrak's conduct. (*Id.*)

Peterson alleges that on May 30, 2024, he sent a completed DC135A request form, which

he describes as privileged correspondence, to Ms. Rouhlac, his psychologist of two years. (Coml.

at 5.) In the form, Peterson requested copies of a new DOC policy pertaining to "Z-code"

---

[2] The factual allegations set forth in this Memorandum are taken from Peterson's Complaint
(ECF No. 3). The Court adopts the pagination supplied by the CM/ECF docketing system.
Where appropriate, grammar, spelling, and punctuation errors in Peterson's pleadings are
corrected for clarity.

renewal and "H-code" removal.[3] (ECF 3-1 at 2.) The form indicates that copies were sent to DOC Secretary Dr. L. Harry ("Harry") and SCI Phoenix Superintendent Joseph Terra ("Terra"). (*Id*.) Peterson alleges that Fanrak intercepted and read the request, and on July 1, 2024, returned a copy that included a response and her signature. (Compl. at 5.) The response to Peterson's request states, "copies of policies can be acquired through the Library." (ECF No. 3-1 at 2.) The response is signed and includes Fanrak's printed name. (*Id*.) The Exhibit also includes partially legible handwritten comments: "[illegible] open, read and respond to client (mental) patient privilege/confidential correspondence" and "impersonated a licensed doctor." (*Id*.) The latter comment includes an arrow pointed at Fanrak's printed name. (*See id*.) Peterson also alleges that, on May 30, 2024, he sent virtually identical completed DC 135A request forms to Mr. Gary, identified as another member of SCI Phoenix staff, and one to Fanrak herself. (*Id*. at 5, 6.; *see also* ECF No. 3-1 at 3, 4.) These forms were returned to Peterson with the same response signed by Fanrak. (*See* ECF No. 3-1 at 3, 4.)

Peterson objected to Fanrak's interception of and review of the form he sent to his psychologist on the ground that the information contained in the request was protected by doctor-patient privilege. (Compl. at 6.) He sought redress as follows: On July 8, 2024, Peterson sent a letter to Terra requesting a criminal investigation into Fanrak's conduct, her arrest and suspension pending the investigation, and money damages. (*Id*.) On July 27, 2024, he contacted Dr. Glushakon, SCI Phoenix Mental Health Department Supervisor, seeking assistance following Fanrak's invasion of his privacy. (*Id*.) On December 4, 2024, Peterson contacted Moore regarding Fanrak's conduct. (*Id*.) On April 15, 2025, Moore remanded Peterson's Grievance No.

---

[3] The Court understands these terms to refer to DOC housing designations.

1116567 for further action. (*Id.* at 7.) Peterson alleges that the remand was to permit a criminal

investigation, which could only be performed by Theobilli. (*Id.*)

On February 11, 2025, Peterson provided Wynumis, Fanrak's supervisor, with a

description of Fanrak's allegedly criminal conduct. (*Id.*) Wynumis allegedly did not pursue a

criminal investigation, did not consult Dusal, Theobilli, or Kertes about an investigation, and did

not contact Special Agent Jolieff to seek Fanrak's arrest. (*Id.*) Both Terra and Moore approved

Wynumis's disposition of Peterson's complaint, allegedly violating Peterson's due process

rights. (*Id.*)

Peterson alleges that on March 2, 2025, he "made an original attempt upon due process of

the criminal offense he was subjected to by defendant Fanrak," and that this effort was received

and time-stamped by Terra the next day. (*Id.*) Peterson also sent correspondence to DOC

Secretary Harry, and to Theobilli and Kertes on March 24, 2025, demanding due process. (*Id.*)

Peterson also alleges that Fanrak retaliated against him after he requested an investigation

into her conduct and filed a grievance against her. (*Id.* at 6.) Specifically, he alleges that she

imposed an H-code designation, which he characterizes as "high extreme custody," on him. On

March 17, 2025, Peterson sought to have the H-code designation removed. (*Id.* at 6.) He also

claims that Fanrak was responsible for his demotion from a higher paid job to a lower paid job,

and that she did this in retaliation for Peterson contacting the United States Department of

Justice, the Federal Bureau of Investigation, the Pennsylvania State Police, the Pennsylvania

Attorney General's Office, and the Pennsylvania DOC complaining of her conduct. (*Id.*)

Peterson claims that Fanrak illegally intercepted, read, and answered a privileged

communication, and thereby engaged in identity theft and impersonation of a physician and

breached Peterson's right to privacy in his confidential mental health information. (*Id.* at 8.) He

claims that Wynumis did not conduct an appropriate investigation and was deliberately indifferent to his rights throughout the grievance process. (*Id*. at 9, 10.) Peterson claims that Wynumis engaged in a conspiracy with Fanrak, Sipple, Dusal, Kertes, and Theobilli to protect Fanrak by providing false statements during Wynumis's investigation. (*Id*. at 11.) Peterson also claims that Theobilli failed to investigate Fanrak's conduct, in violation of his due process rights. (*Id*. at 12-13.) He asserts similar claims against Kertes and Dusal.  (*Id*. at 13-14, 15-16.) Peterson claims that Moore, having remanded his original grievance for further investigation, violated his rights when she accepted the findings of the investigation performed by Wynumis following her remand. (*Id*. at 14-15.) He claims that Sipple mishandled his grievance both initially and after the grievance was remanded by Moore. (*Id*. at 17-18.)

Peterson asserts First Amendment retaliation and Fourteenth Amendment due process claims against Fanrak, as well as claims against the remaining Defendants for (1) failure to protect his private information, (2) failure to investigate Fanrak's conduct, (3) failure to adhere to DOC policies, and (4) mishandling his grievance. (*Id*. at 18-19.) He also asserts claims against Sipple, Wynumis, and Theobilli in their supervisory capacities. (*Id*. at 20.) Peterson seeks money damages and a declaratory judgment.[4] (*Id*. at 20.)

## II.    STANDARD OF REVIEW

The Court grants Peterson leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[5] Accordingly, 28 U.S.C. §

---

[4] Declaratory relief is unavailable to adjudicate past conduct, making Peterson's request for this relief improper. *See Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per curiam*) ("Declaratory judgment is inappropriate solely to adjudicate past conduct" and is also not "meant simply to proclaim that one party is liable to another.").
[5] However, as Peterson is a prisoner, he will be obligated to pay the full filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

1915(e)(2)(B)(ii) requires that the Court dismiss the Complaint if it fails to state a claim.

Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same

standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see*

*Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to

determine whether the Complaint contains "sufficient factual matter, accepted as true, to state a

claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quotations omitted). At this early stage of the litigation, the Court accepts the facts alleged in the

pro se Complaint as true, draws all reasonable inferences in the plaintiff's favor, and asks only

whether the Complaint, liberally construed, contains facts sufficient to state a plausible claim.

*Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds*

*recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do

not suffice. *Iqbal*, 556 U.S. at 678. As Peterson is proceeding pro se, the Court construes his

allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay*

*Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). The Court will "apply the relevant legal

principle even when the complaint has failed to name it." *Id.*; s*ee also Doe v. Allegheny Cnty.*

*Hous. Auth.*, No. CIV.A. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) ("While a court

must liberally construe the allegations and 'apply the applicable law, irrespective of whether the

pro se litigant mentioned it be name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this

does not require the court to act as an advocate to identify any possible claim that the facts

alleged could potentially support."). However, "pro se litigants still must allege sufficient facts in

their complaints to support a claim." *Vogt*, 8 F. 4th at 185 (quoting *Mala*, 704 F. 3d at 245). An

unrepresented litigant "cannot flout procedural rules—they must abide by the same rules that

apply to all other litigants." *Id.*

### III.    DISCUSSION

Peterson asserts claims based on alleged violations of his constitutional rights. The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)).

### A.    HIPAA Claims

Peterson asserts claims based on the alleged review of his personal information by Defendant Fanrak, which he characterizes as a violation of his right to privacy in his medical information. Liberally construing the allegations in the Complaint, Peterson may be asserting a claim for violation of his HIPAA rights. However, there is no federal private right of action under HIPAA. *See Cobb v. PrimeCare Med. Corp.*, No. CIV.A. 18-1516, 2020 WL 13729620, at *6 (M.D. Pa. Jan. 29, 2020), *report and recommendation adopted*, 2020 WL 13730063 (Feb. 24, 2020) (stating that "HIPAA 'does not create a private right of action for alleged disclosures of confidential medical information.' . . . Therefore, neither the HIPAA statute nor 42 U.S.C. §

1983 supports an action based on HIPAA violations.") (internal citations omitted). Accordingly, all claims asserting violations of HIPAA are dismissed with prejudice.

### B.    Claims Against Fanrak

#### 1.    Review of Private Information

Peterson asserts a claim against Fanrak based on her unauthorized review of private information that he included in a request form addressed to his psychologist. (Compl. at 8.) The Court liberally construes this as a due process claim; however, this claim is not plausible.

Prisoners maintain a substantive due process right to privacy in their medical information. *See Doe v. Delie*, 257 F.3d 309, 316 (3d Cir. 2001) ("The right to nondisclosure of one's medical information emanates from a different source and protects different interests than the right to be free from unreasonable searches and seizures."). However, not all disclosures of medical information will violate a prisoner's right to privacy in his medical information; it "may be curtailed by a policy or regulation that is shown to be 'reasonably related to legitimate penological interests.'" *Id.* at 317 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

Courts construing prisoner's medical privacy claims have framed the right narrowly and have applied it to situations involving "unusual medical condition[s] which, if disclosed unnecessarily, would likely expose the inmate to ridicule, discrimination, or even potential violence and harm, particularly when word of the condition is likely to spread through 'humor or gossip[.]'" *Smith v. Hayman*, No. CIV.A. 09-2602, 2012 WL 1079634, at *18 (D.N.J. Mar. 30, 2012), *aff'd,* 489 F. App'x 544 (3d Cir. 2012). In *Delie*, for example, an HIV-positive inmate claimed that his constitutional right to medical privacy was violated when, *inter alia*, prison nurses announced his medications loud enough that other prisoners could hear and infer his condition; prison staff informed escorting officers of his medical condition; and during physician

visits, the clinic room door was kept open, allowing officers, inmates, and guards to see and hear

the plaintiff and the treating physician. 257 F.3d at 311-12. In *Smith v. Hayman*, 489 F. App'x.

544 (3d Cir. 2012), the Third Circuit held that a prisoner asserted a plausible claim for

deprivation of his constitutional right to medical privacy related to his attempt to be diagnosed

and treated for Gender Identity Disorder. "Most cases concern revealing an inmate's HIV-

positive status or that they are transgender." *Ibrahim v. DeFilippo*, No. CIV.A. 19-5021, 2021

WL 753898, at *7 (D.N.J. Feb. 26, 2021) (citations omitted) (denying motion to dismiss

prisoner's Fourteenth Amendment claim where court could not "find that PTSD is commonplace

and does not constitute an 'unusual medical condition, which, if disclosed unnecessarily, would

likely expose the inmate to ridicule, discrimination, or even potential violence.'")

Peterson cannot assert a due process claim for disclosure of his private medical

information primarily because the request form that he sent to his psychologist that Fanrak

allegedly intercepted and read does not include any medical information. (*See* ECF No. 3-1.)

Rather, the form requests copies of policies related to housing designations. (*Id*.) Peterson does

not explain why this information is private. In this regard, it is of note that, based upon the copy

of the request form included with the Complaint, Peterson himself shared the allegedly private

information with DOC Secretary Harry, Superintendent Terra, Mr. Gary, and Fanrak herself,

calling into question the private nature of the information. (*Id*.) Additionally, Peterson does not

allege that Fanrak shared any of the information included in the request form, nor does he allege

that disclosure of the information contained in the form would "likely expose [him] to ridicule,

discrimination, or even potential violence and harm." *Smith*, 2012 WL 1079634, at *18.

Peterson's claim that Fanrak violated his constitutional rights by intercepting and reading the

DC135A request form addressed to his psychologist is not plausible and is dismissed. The

dismissal will be with prejudice because amendment of this claim would be futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002).[6]

### 2.    Retaliation

Peterson asserts a retaliation claim against Fanrak, alleging that after he requested an investigation into her conduct and filed a grievance against her based on her review of his personal information, she imposed an H-code designation, which he characterizes as "high extreme custody," on him, and arranged for his demotion from a higher paid job to a lower paid job. (Compl. at 6.)

Although a prisoner has no constitutional right to a grievance process, *see Gerholt v. Wetzel*, 858 F. App'x 32. 34 (3d Cir. 2021), a prisoner can state a claim based on retaliation for filing a grievance. *See Robinson v. Taylor*, 204 F. App'x 155, 157 (3d Cir. 2006) (holding that a prisoner's filing of a grievance is constitutionally protected conduct) (citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003)). In order to state a plausible First Amendment retaliation claim, a prisoner must allege that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). "An adverse consequence 'need not be great in order to be actionable[;]' rather, it need only be 'more than *de minimis*.'" *Watson v. Rozum*, 834 F.3d 417, 423 (3d Cir. 2016) (quoting *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006)) (alterations in original). "[B]eing placed in

---

[6] Peterson also asserts claims against the remaining Defendants for failing to protect his constitutional right to privacy in personal medical information contained in personal correspondence to his psychologist. (Compl. at 18.) However, this claim is not plausible because, for the reasons stated, Peterson has not established that protected, private medical information was disclosed. Accordingly, this claim is dismissed with prejudice.

lockdown, being moved to restricted housing, and being issued misconduct charges are more

than '*de minimis*' adverse actions." *See Palmore v. Hornberger*, 813 F. App'x 68, 70 (3d Cir.

2020) (*per curiam*) (quoting *McKee*, 436 F.3d at 170); *see also Mitchell*, 318 F.3d at 530-31

("Mitchell's allegation that he was falsely charged with misconduct in retaliation for filing

complaints against Officer Wilson implicates conduct protected by the First Amendment."). The

timing of the allegedly retaliatory behavior relative to the constitutionally protected conduct may

establish a causal link between the two for purposes of establishing motivation. *See Watson*, 834

F.3d at 422.

Peterson alleges that he filed a grievance against Fanrak following her interception and

review of a completed DC 135A request form addressed to his psychologist, and that in

retaliation, she arranged for his assignment to restrictive housing and for his reassignment to a

lower paying job. This claim is plausible and will be served for a responsive pleading.

### C.    Claims Based on Failure to Investigate and Prosecute

Peterson asserts due process claims against Theobilli, Sipple, Kertes, and Wynumis,

asserting that they failed to advance Fanrak's criminal acts to law enforcement agents. (Compl.

at 18.) The Court understands Peterson to be asserting claims for failure to investigate Fanrak's

interception and review of information intended for his psychologist and for failure to bring

charges against her on this basis. These claims are not plausible.

First, "an allegation of a failure to investigate, without another recognizable

constitutional right, is not sufficient to sustain a section 1983 claim." *Graw v. Fantasky*, 68 F.

App'x 378, 383 (3d Cir. 2003) (quotations omitted); *see also Boseski v. N. Arlington*

*Municipality*, 621 F. App'x 131, 135 (3d Cir. 2015) (*per curiam*) ("Boseski has no cognizable

claim against a government entity for its failure to investigate or bring criminal charges against

another individual."). Next, "[a] private citizen lacks a judicially cognizable interest in the

prosecution or nonprosecution of another." *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619

(1973) (finding that a citizen lacks standing to contest prosecutorial policies "when he himself is

neither prosecuted nor threatened with prosecution") (citations omitted). Furthermore, "an

agency's decision not to prosecute or enforce, whether through civil or criminal process, is a

decision generally committed to an agency's absolute discretion." *Heckler v. Chaney*, 470 U.S.

821, 831 (1985). For these reasons, and having found that Peterson has stated no underlying

violation, the failure to investigate and prosecute claims are dismissed with prejudice.

### D.    Claims Based on Failure to Adhere to DOC Policies

Peterson claims that Defendants repeatedly breached the DOC code of ethics and failed

to comply with relevant policies. (Compl. at 19.) However, "[a]s many courts have held,

corrections officials cannot be held liable for failing to conform to procedures outlined in inmate

handbooks and other internal prison procedures." *Bowman v. Wetzel*, No. CIV.A. 20-135, 2020

WL 3258946, at *6 (W.D. Pa. June 16, 2020) (citing cases); *see also Hernandez-Santana v.

Little*, No. CIV.A. 24-6447, 2025 WL 2538435, at *5 (E.D. Pa. Sept. 3, 2025) (holding that "a

violation of internal prison procedures does not create a constitutional violation"). Accordingly,

because a failure to adhere to policies is not alone a constitutional violation, these claims are

dismissed with prejudice.

### E.    Claims Based on Alleged Mishandling of Grievance Process

Peterson appears to assert claims against Sipple and Moore based on their participation in

the grievance process. (Compl. at 14-15, 17-18.) However, participation in the grievance process

does not, without more, establish involvement in the underlying constitutional violation. *See

Curtis v. Wetzel*, 763 F. App'x 259, 263 (3d Cir. 2019) (*per curiam*) ("The District Court

properly determined that Defendants Wenerowicz, Lewis, and Shaylor – who participated only in the denial of Curtis' grievances – lacked the requisite personal involvement [in the conduct at issue]."); *Folk v. Prime Care Med.*, 741 F. App'x 47, 51 (3d Cir. 2018) (*per curiam*) ("Although some of these defendants were apparently involved in responding to some of Folk's prison grievances, there are no allegations linking them to the underlying incidents and thus no basis for liability based on those later grievance reviews.").

Moreover, to the extent Peterson's claims are based on the handling of his grievances, they are not plausible because "prisoners do not have a constitutional right to prison grievance procedures." *Gerholt*, 858 F. App'x at 34 (citing *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) and *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)). Accordingly, allegations such as those raised by Peterson predicated on failures of the grievance process or improper handling of a response to grievances do not give rise to a constitutional claim. *See Williams v. Armstrong*, 566 F. App'x 106, 109 (3d Cir. 2014) (*per curiam*) ("[A]ny allegations of improprieties in the handling of his grievance "do not state a cognizable claim under § 1983."); *Woods v. First Corr. Med. Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (*per curiam*) ("We agree with the District Court that because a prisoner has no free-standing constitutional right to an effective grievance process, Woods cannot maintain a constitutional claim against Lucas based upon his perception that she ignored and/or failed to properly investigate his grievances." (internal citation omitted)). Because the conduct of these Defendants appears limited to their role in the grievance process, Peterson's claims against them will be dismissed with prejudice.

F.    **Supervisory Liability Claims**

Peterson asserts claims against Sipple, Wynumis (who is identified as Fanrak's supervisor), and Theobilli in their supervisory capacities. As pled, however, these claims are not

plausible. Generalized allegations that a supervisory defendant is "in charge of" or "responsible

for" an office or facility are insufficient to allege personal involvement in an underlying

constitutional violation. *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*)

("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,'

and that liability stemmed merely from defendants' 'belief' that their conduct would be

'tolerated.' However, a director cannot be held liable 'simply because of his position as the head

of the [agency]." (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005)). Also, liability

under § 1983 cannot be predicated on a respondeat superior basis. *Chavarriaga v. N.J. Dep't of

Corr.*, 806 F.3d 210, 227 (3d Cir. 2015).

Rather, "[s]uits against high-level government officials must satisfy the general

requirements for supervisory liability." *Wharton v. Danberg*, 854 F.3d 234, 243 (3d Cir. 2017).

There are "two general ways in which a supervisor-defendant may be liable for unconstitutional

acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir.

2014), *rev'd on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may

be liable if he or she "'with deliberate indifference to the consequences, established and

maintained a policy, practice or custom which directly caused [the] constitutional harm.'" *Id.*

(quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir.

2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he

or she participated in violating the plaintiff's rights, directed others to violate them, or, as the

person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional

conduct." *Chavarriaga*, 806 F.3d at 227.

The first type of liability includes a failure to supervise; however, a plaintiff asserting

such a claim must "identify a supervisory policy or practice that the supervisor failed to employ,

and then prove that: (1) the policy or procedures in effect at the time of the alleged injury created

an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the

policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the

constitutional injury was caused by the failure to implement the supervisory practice or

procedure." *Barkes*, 766 F.3d at 317. A supervisory claim requires "a showing that there was an

actual constitutional violation at the hands of subordinates" before finding liability on the part of

the supervisor prison official. *Allen v. Eckard*, 804 F. App'x 123, 127 (3d Cir. 2020) (*per

curiam*) (concluding that failure to train and supervise claims asserted against supervisor

defendants were meritless where plaintiff failed to make plausible showing of underlying

constitutional violation).

To set forth a claim for supervisory liability under the policy-and-practice strand of

supervisory liability, a plaintiff must:

> (1) identify the specific supervisory practice or procedure that the supervisor
> failed to employ, and show that (2) the existing custom and practice without
> the identified, absent custom or procedure created an unreasonable risk of the
> ultimate injury, (3) the supervisor was aware that this unreasonable risk
> existed, (4) the supervisor was indifferent to the risk; and (5) the underling's
> violation resulted from the supervisor's failure to employ that supervisory
> practice or procedure.

*Chavarriaga*, 806 F.3d at 227 (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir.

2001)). "Put another way, the inmate must identify the supervisor's specific acts or omissions

demonstrating the supervisor's deliberate indifference to the inmate's risk of injury and must

establish a link between the supervisor, the act, and the injury." *Id.*

Moreover, a prison official's participation in the grievance process, failure to take action

in response to a prisoner's letter about the conditions in which he is confined, or failure to act

after becoming aware of an employee's actions, is, without more, an insufficient basis upon

which to base those officials' personal involvement in the underlying violations. *See Murray v. McCoy*, No. CIV.A. 23-2582, 2024 WL 1328231, at \*3 (3d Cir. Mar. 28, 2024) ("Superintendent Ransom's awareness of Murray's allegations concerning C.O. McCoy, without more, is insufficient to establish personal involvement."); *Burk v. Crowe*, No. 19-5792, 2020 WL 42758, at \*4 (E.D. Pa. Jan. 3, 2020) (plaintiff's "general allegation that he 'wrote to' Crowe, Cassidy, Budd, and Lagana 'when this happen[ed]' is too vague and undeveloped to state a plausible basis for liability against these individuals"); *Dooley*, 957 F.3d at 374 (evidence that high level official was sent a copy of documents related to prisoner's claim and official's lack of response did not establish personal involvement, nor did involvement of officials who only reviewed and denied prisoner's grievances).

The bulk of Peterson's claims relate to Fanrak's interception and review of information included in a DC135A request form addressed to his psychologist. For the reasons stated, this conduct does not give rise to a constitutional claim, and therefore, any derivative supervisory liability claim based on this conduct is not plausible. *See Allen*, 804 F. App'x at 127. However, while Peterson has included a plausible retaliation claim against Fanrak in his Complaint, he has not stated a plausible supervisory liability claim against any of Defendants based on Fanrak's alleged retaliatory conduct because he has not alleged that they participated in this conduct or that they created and implemented a policy or custom that resulted in this conduct. Accordingly, his supervisory claims are not plausible and are dismissed. Peterson will be granted leave to amend these claims in accordance with the above.

## IV.    CONCLUSION

For the foregoing reasons, the Court grants Peterson leave to proceed *in forma pauperis*. The following claims are dismissed with prejudice: claims asserted under HIPAA, due process

16

claims based on the disclosure of medical information, claims based on the alleged failure to protect Peterson's right to maintain the privacy of his medical information, claims based on failure to investigate Fanrak's conduct and prosecute her, claims against Sipple and Moore arising from their participation in the grievance process, and claims based on failure to adhere to DOC policies. Peterson's claims against Sipple, Wynumis, and Theobilli in their supervisory capacities are be dismissed without prejudice. At this point, Peterson may choose to proceed only on his First Amendment retaliation claim against Fanrak or file an amended complaint to attempt to cure the deficiencies in his claims dismissed without prejudice.

An appropriate Order follows.

**BY THE COURT:**

**/s/ Kelley B. Hodge**

**KELLEY BRISBON HODGE, J.**